Allread, J.
The relator, Lincoln Fritter, brought this action in mandamus in this court,against the defendant, to compel his restoration to membership in said association, and alleges in his amended petition—
That the. Fraternal Mystic Circle is a corporation duly organized under the laws' of Ohio, for the purpose of mutual protection and relief of its members, and for the payment of *365 stipulated sums of money to the families of its deceased members, and has its principal place of business at No. 208J South High street, Columbus, Ohio.
That there is a small body in this corporation, known as the Supreme Ruling, which claims to be vested with and does exercise the supreme power of the corporation, for the man, agement of its business and promoting its plans of protection andjbenefits, holding its regular sessions annually.
That during the interim of the sessions of the Supreme Ruling, a body of five persons, known as the supreme executive committee, claims to be vested with all the powers of that body, except legislative, etc., and exercises the general supervision of the business of the order.
That the rules, regulations, constitution and by-laws of said corporation provide for no mode or right of appeal from the actions or decisions of said Supreme Ruling or said supreme executive committee.
That the relator, on December 10, 1884, became a member of the defendant and of said Supreme Ruling, and a contributor to its benefit fund, and on January 9,1885, received from said corporation a certificate of membership or policy of insurance, number twelve.
By said certificate or policy, said corporation promised and agreed to pay out of its benefit fund, to the beneficiaries named therein, a sum not exceeding $3,000.00, in accordance with and under the provisions governing the said fund, upon satisfactory evidence of the total disability of the relator, providing the relator is in good standing at the time of his death or total disability. And if said relator should die after having been a member for five years or more, to pay said beneficiaries seventy-five per cent, of all benefit fund assessments paid by him, in addition to the amount of his benefit certificate.
That said relator has fully observed and complied with each and every law, usage, duty, obligation, condition and requirement imposed on him by said Fraternal Mystic Circle and *366 said Supreme Ruling, and has contributed assessments from time to time as required by the rules of said order. That said defendant has, or claims to have, $80,000.00, largely in the nature of surplus funds, to which said relator has contributed, and in which he has, in common with the other members, a'general interest.
That since February 3, 1892, the relator has been excluded, against his will, from all the meetings of said ruling, and denied the right of participating in all the deliberations of said ruling, and of voting for officers of said ruling, and upon all questions of business, including the adoption and changing of the by-laws of the said ruling. And on June 26, 1894, the relator, being without default, failure, omission or neglect, was, against his will, removed and expelled from all the rights and privileges of membership in said corporation. Said expulsion is alleged to be illegal, oppressive and wrong, on the following grounds :
That the constitution and by-laws of the Supreme Ruling are silent as to the terms under which the power of expulsion may be exercised.
That neither said Supreme Ruling, nor said supreme executive committee, had the authority or jurisdiction of expulsion.
That said relator was not fully and thoroughly informed of the charges, had no proper notice of the time and place of trial, and was not permitted to appearand defend in person and with counsel, or to meet his accusers or witnesses, or to question them.
That said supreme executive committee was biased and prejudiced against relator, and did not act in-good faith; and that its action was malicious, capricious and arbitrary.
The defendant, by its answer, admits its incorporation and the location of its principal place of business, and admits that the relator was, prior to June 26, 1894, a member of the defendant in good standing, and held certificate number twelve, as he claims, and was a member of the Supreme Ruling of The *367 Fraternal Mystic Circle from December 10, 1884, to February 3, 1892, and admits the payment of all assessments charged against relator, prior to June 26,1894, and the tender of payment of all assessments accruing since that date. It also admits that it has a large amount of assets, in the nature of surplus funds, aggregating at least $80,000.00, to which the relator contributed during his membership by the payment of assessments levied, and that in the event the relator had retained his membership in defendant, he would have been in position to receive the benefits substantially as stated in said petition.
The defendant says it was incorporated on December 9, 1884, under section 3630, of the Revised Statutes, for the carrying into effect, the aim and object of a secret society, as follows:
To unite fraternally, all white persons of proper age and of good moral and social character, and if for beneficial purposes, of sound bodily health, of such ages as the law of the order limited or named.
To give all moral and material aid in its power to its members and those dependent upon them ; to provide for the relief of the sick and disabled members, and to care for the living, and to bury the dead; to educate its members socially, morally and intellectually; and for the payment of stipulated sums of money to the family or heirs, widows, orphans and dependents of deceased beneficiary members, who might become permanently disabled by disease, accident or age, as limited and described in the constitution and laws of the order, the funds therefor to be raised by donations, mutual contributions or assessments levied upon its members.
It is alleged that in order to better accomplish the objects and purposes as aforesaid, the supreme power of the Fraternal Mystic Circle, for the management of its business and promoting its plans of protection and benefits, was vested in a body then and thereafter to be known as the Supreme Ruling, with authority to adopt and promulgate a constitution and by-laws *368 for tbe government of the defendant in all its departments. That in pursuance of the authority and power so vested as aforesaid, the Supreme Ruling did adopt and establish for the government of said order, the constitution and by-laws and rules, a copy of which is attached to said answer.
That among other things in said constitution, rules and laws, it is provided that a person admitted to membership in the order shall receive a certificate thereof, as proof of that fact, and it is stipulated in said certificate, applicable to all holders thereof, including the relator, that each member shall be governed by the constitution, by-laws and rules then in force or thereafter established, and no person can claim any benefit or emolument whatever, from the order without subjecting himself to the government aforesaid.
Defendant further alleges that the said Supreme Ruling constituted a supreme executive committee consisting of five members, which is vested, during the interim of the sessions of the Supreme Ruling, with all the powers of the Supreme Ruling, except legislative, etc., and has the general supervision of the order, and that included in the aforesaid ad interim powers, is that of excluding a member of the order for the violation of any of its regulations.
The remaining part of the answer relates to the clause under which the power of expulsion was attempted to be exercised, the conduct of the relator in reference to circulating documents, creating discord among the membership, and the filing of charges with tbe superintendent of insurance against said company and its officers; and the filing of charges against the relator; his appearance for trial on June 19, 1894; the adjournment to June 26 ; and the expulsion from membership of the relator by said supreme executive committee on said date.
A reply in the nature of a general denial was filed.
Upon the trial it was shown, that shortly after the incorporation of the defendant, a body styling itself the Supreme Ruling of the Fraternal Mystic Circle, consisting then of four *369 teen members, met and adopted a constitution and by-laws, wbicb purported to be the constitution and by-laws of the Supreme Ruling of the Fraternal Mystic Circle, governing the order; at the same time, the same body prescribed a form of constitution and by-laws for subordinate rulings.
We are not furnished with the original constitution and bylaws adopted, at the outset in 1884, but it appears that several amendments were made from time to time, by the Supreme Ruling. A copy of the constitution and laws in force in 1894 is attached to the answer, and submitted in evidence.
It appears that in the main features no substantial change has been made.
In 1894, charges were filed with the supreme executive committee against the relator and others, in which it was charged that they had violated the constitution and laws of the Supreme Ruling of .The Fraternal Mystic Circle, and the specifications are:
1. That, in disobedience of section 3, of Law 16, of the laws of the Supreme Ruling governing the order, they issued and circulated documents relating to the order, which documents did not have the approval of the Supreme Mystic Ruler.
2. That they violated section 1, of Law 17, of said laws, being guilty of conduct unbecoming a member of the order, and of a disregard of their obligations, in making false and malicious statements to subordinate rulings, and tó the public at large, concerning the management and financial condition of the order, and of maliciously endeavoring to cause it to be believed that the Supreme Mystic Ruler and other members of the Supreme Ruling have, as such officers, misappropriated a large amount of the funds of the order, have incompetently managed its affairs, and are incompetent to perform the duties of their respective offices; - and that they heretofore called together the representatives of subordinate rulings, and held meetings in the city of Columbus with the object and purpose *370 of creating insubordination among said rulings, to cause them to withdraw support from the Supreme Ruling, and to establish, as they might be able, an independent order out of such members at large and subordinate rulings.
On June 26, 1894, the Supreme Executive Committee proceeded to hear these charges, and found the relator and the others guilty of each of the charges, and expelled them from the order, and annulled and canceled all claims under their policies.
There is much dispute eoncerning what took place on the day the charges were first for hearing and on the day when the hearing actually took place, but it is clear that the relator did not consent to the action or proceedings of the committee in relation to the expulsion.
The main question in the case is, did the supreme executive Committee have the power of expulsion?
It is contended that such power is inherent in a corporation, and it, seems to be established in the cases cited by counsel for defendant, that such power exists where no property rights are involved. 5 Bull. 124; 2 Bull. 125.
Where a society is organized for social or religious purposes, and no property rights are involved; except such as are merely incidental to the main purposes of the society, we think the eases show an inherent right of expulsion of members, upon three grounds, as follows :
1. For offenses which are indictable at common law, rendering a man infamous and unfit for association.
2. Offenses against the duty of an incorporator, and in violation of the purposes for which it was created.
3. Mixed offenses, involving both of the above.
Such inherent power of expulsion is not to be exercised, however, by any body or power, but the association itself.
Bacon on Beneficial Socs., sec. 100.
And which is the membership at large. Standard Life Ins. Co. ease, 38 Ohio St. 281.
The power of expulsion, not having been exercised by the *371 corporation, we must look for express power to justify its exercise by a subordinate branch or committee.
We may as well observe, however, that there is a distinction made by the courts, between associations organized merely for some social or religious purpose, and those where some substantial property right is involved. Board of Trade case, 80 Ills. 136; Masonic ease, 86 Ills. 598; 1 Bacon on Beneficial Soc., section 99.
Avery, J., who decided the case in 2 Bull., says, in I. O. O. F. ease, 4 Bull. 513 : “That where articles of association are resorted to against common right, courts lean to a strict construction.’5
The power of expulsion can not be delegated to a committee or officer in the absence of the clearest authority in the constitution and by-laws. 1 Bacon on Beneficial Soc., sec. 100, and cases cited.
It is significant that The Fraternal Mystic Circle never adopted a constitution or by-laws, and, as an organization, never authorized any one else to do so.
The original incorporators, with nine other persons, selected by them, constituted what was called the Supreme Ruling.
They met and adopted a certain constitution and by-laws, purporting to be the constitution and by-laws of the Supreme Ruling, governing the order.
The claim that the Supreme Ruling is an independent society is without foundation.
From the admission of the defendant, in its answer, as well as by the constitution and by-laws it adopted, it purports to be an agency of The Fraternal Mystic Circle.
Its powers are self-constituted and self-assumed.
They- do not arise from any act of the corporation itself. ■
Each individual member, however, was required upon his admission, to accept a certificate of membership, which is stipulated to be “upon condition that said member complies in the future with the laws, rules and regulations, now govern *372 ing the said ruling or fund, or that may hereafter be enacted by the Supreme Ruling, to govern said ruling and fund.”
It is claimed that members individually, having consented to such usurped power of the Supreme Ruling, are bound by the terms contained in such constitution and laws.
We think the proposition to a limited extent, may be con- ' ceded. But the defendant, by the admissions of the answer, is organized under section 3630, of the Revised Statutes, and is therefore, an accident and life insurance company on the assessment plan.
It is required to be organized and conducted as provided by law, and its members are entitled to the protection contemplated thereby.
The most that can be asserted is, that the members agreed to such rules and laws of the company, as are not oppressive and arbitrary, but reasonable and in consonance with the provisions and policy of the law in respect to such companies.
We think the rules and regulations of the Supreme Ruling are such as to justify the courts in protecting the contributing and beneficial members from arbitrary expulsions.
The office-holding department, in the main, constitute the Supreme Ruling. They elect themselves the administrative officers of the company, and by their self-imposed constitution are the supreme legislative power.
They have taken the precaution of constituting themselves life members of the Supreme Ruling, and many other provisions appear showing the studious care with which the supreme power is preserved to this “official junta,” in perpetuity-
The provisions in regard to supreme delegates are delusive.
They are so “hedged about” that they can never interfere with the official cabinet.
After ten years of existence, we find the number of delegates *373 entitled to seats in the Supreme Ruling, is only seven, being less than one-third of the body.
In the interim of the sessions of the Supreme Ruling, its power is confided to the supreme executive committee, consisting of the supreme mystic ruler, supreme treasurer, supreme recorder, and two others elected.
This committee, among other important duties, are required to examine their own books, whenever they deem it advisable to do so; pass upon all claims, etc., and have all the powers of the Supreme Ruling, except legislative, and naming the salaries of officers, etc.
Many óf these arbitrary and oppressive rules will be disregarded by the courts, and the general policy of the laws of insurance companies will be looked to, in the protection of the rights of a member from forfeiture.
This power of expulsion is claimed to be conferred by section 1, law 17, of the by-laws of the Supreme Ruling, which provides : “Any member or officer of the Supreme or subordinate rulings, or member at large, who shall be found guilty of violating the constitution or laws of the Supreme Ruling, or of conduct unbecoming a member of this order, or of any violation of his obligations, shall be suspended or expelled, as the Supreme Ruling may determine.”
Such power of expulsion must be exercised strictly within the terms granted, for it is only binding, if at all, by the terms of relator’s certificate of membership.
The charges must be such as to justify the expulsion, and the member must have a fair trial, before an impartial tribunal.
Courts will not sanction expulsion and forfeiture of property rights upon any other condition.
It was sought to expel relator for having violated rule 3, law 16, which prohibits sending supplies and documents, etc., to the subordinate rulings, without the approval of the Supreme Mystic Ruler.
Taking this section in connection with the subject-matter *374 of the law, we think it contemplates official or semi-official circulars and documents relating to the order, such as are referred to in the preceding section, as forming the supplies for subordinate rulings. Many things might be claimed under such a general clause, which would not be sufficient upon which to found a charge justifying an expulsion from membership.
We think the charges should be full and complete. As they stand, they do not show a ground for expulsion.
The facts should be stated. If, under that rule, it was sought to prohibit discussion or reasonable criticism of the policy of officers of the company, because it related to the order, the rule, to that extent, would contravene public policy; but we are satisfied that the supreme executive committee did not have the power of expulsion. We think so grave and important a power should not be inferred from such general terms, especially when the power of expulsion for subordinate rulings is carefully provided for, and the clear inference from the terms of section 1, law 17, is that the power of expulsion or suspension is reserved for the Supreme Ruling to determine.
The constitution and by-laws of the Supreme Ruling, full and complete as they are in all provisions supporting the power of the official members, are sadly deficient in regard to protecting the rights of a member on trial for expulsion.
Leaning to a strict construction in favor of the member, and against the power of expulsion and forfeiture, it may well be doubted whether such general and uncertain language as that contained in Law 17, will give, even to the supreme ruling, itself, the power of expulsion.
There is no provision regulating the filing of charges, the giving of notice, the taking of testimony, or the creation of a tribunal for the trial of charges.'
The provision, that such member shall be “ found guilty,” requires some formal mode of trial, which does not seem to be provided for.
*375 We can readily see how the power of expulsion by the Supreme Ruling might be arbitrarily exercised to rid themselves of members objectionable to them, and thus more securely intrench themselves in power and in office. In fact, we are not entirely certain that such motive may not have influenced the supreme executive committee in this case. From the charges and allegations of the answer it appears, that the related’ and his associates made certain statements alleged to be false and malicious, to the subordinate rulings and the public, concerning the management and financial condition of the order, and challenging the administration and conduct of the officers of the Supreme Ruling.
To permit the officers themselves, whose conduct was assailed, to try and expel members on such charges, would, at least in the absence of clearest authority and full showing of right, violate the plainest principles of justice.
In the case at bar, for the court to sustain such expulsion and forfeiture of beneficial rights, would be, in effect, an aiding and abetting of the unlawful purposes of the controlling officers, and a sanction of the vicious, underlying principle of the constitution and by-laws of the Supreme Ruling of this order.
The law requires a fair trial, upon sufficient charges, after notice and full opportunity to defend, and before an impartial and unbiased tribunal.
The supreme executive committee of the Supreme Ruling was without power or authority to expel the relator, and their action in that regard'is invalid.
It is claimed that the remedies afforded by the society must be exhausted before resort can be had to the courts. As a general proposition, that doctrine is well established, but it does not apply to the case at bar, for the reason, that no appeal is given from the supreme executive committee, except in certain cases named, and the right of expulsion is not named; neither does the rule apply, where the body acting is without authority.
Louis G. Addison, Henry A. Williams, and Nash & Lentz, for plaintiff.
Merrick & Thompson and Holmes & Hiding, for defendant.
We think mandamus is the proper remedy.
Wrigi-it, J., in 28 Ohio St. 665, does not deny the right, and the question was not decided.
Upon examination, we are of the opinion that the great weight of authority sustains the right to such remedy in, cases like the present.
Peremptory writ awarded.